KELLEY DRYE & WARREN LLP
Craig A. Wolfe (CW-2641)
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
cwolfe@kelleydrye.com

Proposed Attorneys for The Official Committee
of Unsecured Creditors of Acme Cake Co., Inc.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| ACME CAKE CO., INC., | Case No. 08-41965 (CEC) |
| Debtor. | |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ACME CAKE CO., INC. DIRECTING ORAL EXAMINATIONS AND PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004

TO THE HONORABLE CARLA E. CRAIG
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of Acme Cake Co.,

Inc. (the "Debtor"), by and through its proposed counsel, Kelley Drye & Warren LLP,

respectfully submits this motion (the "Motion") for an order under Rule 2004 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") compelling the persons identified in

the attached Exhibit A to appear for oral examinations and, if applicable, to produce documents.

The topics of examinations and document requests, as well as a form subpoena which will be

conformed and served on each party listed on Exhibit A, are attached hereto as Exhibit B.  In

support thereof, the Committee respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicate for the relief requested herein is Bankruptcy Rule 2004.

## BACKGROUND

2. On April 4, 2008 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has continued in possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. According to the Debtor, since 1934, it has made and sold baked goods that are sold throughout the New York metropolitan area.

4. On November 26, 2009, the Debtor filed a disclosure statement (the "Disclosure Statement") and plan of reorganization (the "Plan").  The Debtor scheduled a January 21, 2009 hearing to approve the Disclosure Statement.  The United States Trustee, the Committee, and Thomas Semon, one of the Debtor's equity holders, each objected to the disclosure statement on a multitude of grounds.  Ultimately, the Disclosure Statement hearing did not go forward on January 21, 2009, and the proceeding was treated as a status conference.

5. The Committee argued that the Disclosure Statement could not be approved because the Plan has incurable deficiencies and it would therefore be a waste of estate resources to proceed with the solicitation process.  For example, the Plan contains gerrymandered classes designed to create an impaired accepting class.  The Debtor created a

false class comprised of a single creditor that is an insider, and proposes to pay that creditor in full over time. The Plan further distributes all of the new equity in the reorganized Debtor to the existing equity holder for no actual commitment to contribute any new value. The Plan provides only that up to $10,000 will be contributed. The most obvious problem with the Plan, however, is that it does not have the support of sufficient creditors. For example, Sabatini Frozen Foods, a member of the Committee with a claim large enough to create veto power, will reject the Plan. The other Committee members have also expressed their rejection of the Plan.

6. Counsel for the Committee has been conducting interviews of individuals who purport to have knowledge of (i) the Debtor conducting unreported cash transactions, (ii) transfers of the Debtor's property that may be subject to avoidance claims, and (iii) other potential causes of action against insiders and affiliated entities that, if successful, would result in substantial recoveries for the Debtor's estate that could provide full payment of unsecured claims in this case.

7. The Committee has discussed these claims with the Debtor, but the Debtor has refused to bring the claims on its own. There is good reason for this, as many of the claims would be against William Wenzel, the principal insider running the Debtor's operations. The remainder of the claims would be against Mr. Wenzel's family members and their businesses.

8. The Committee thus believes that it has a duty to investigate potential claims and needs discovery to establish a basis to seek standing to bring the claims on its own. Approval of this Motion will permit the Committee to obtain that information, which to date, has not been forthcoming consensually from the Debtor. The information on the potential claims and the Debtor's finances will also permit the Committee to negotiate with other parties to serve

as possible sponsors of one or more competing plans.  The Committee has already begun such negotiations.

**LEGAL AUTHORITY**

9.      Rule 2004 of the Federal Rules of Bankruptcy Procedure provides, in pertinent part, as follows:

>       (a)     *Examination on Motion.*   On motion of any party in interest, the court may order the examination of any entity.
>
>       (b)     *Scope of Examination*.  The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . .
>
>       (c)     *Compelling attendance and production of documentary evidence.*  The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial.  As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.

10.     It is well-established that the scope of an examination under Bankruptcy Rule 2004 is unfettered and broad.  In re Bakalis, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996); In re Vantage Petroleum Corp., 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983).  Indeed, the examination can "legitimately be in the nature of a 'fishing expedition.'"  In re M4 Enters., Inc., 190 B.R. 471, 474 (Bankr. N.D. Ga. 1995); In re Frigitemp Corp., 15 B.R. 263, 264 n.3 (Bankr. S.D.N.Y. 1981) (noting that predecessor to Rule 2004 examinations have been likened to "fishing expeditions").  Examinations under Bankruptcy Rule 2004(a) and (c) in a chapter 11 case may properly include within their scope, among other things, any matter which may relate to the property and assets of the estate, the financial condition of the debtor, any matter which may

affect the administration of a debtor's estate, and any matter relevant to the case or to the formulation of a plan.

11. Here, the information sought by the Committee in connection with this Motion is consistent with Bankruptcy Rule 2004 and the interpretive caselaw. "The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved." In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing Cameron v. United States, 231 U.S. 710, 717 (1914)). "Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." In re Ionosphere Clubs, Inc., 156 B.R. 414, 432 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994); see also In re Ecam Publications, Inc., 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991) (third parties may be subject to examination if they have knowledge of the debtors' affairs).

12. The Committee properly seeks to confirm whether claims or causes of action exist against the Debtor and its insiders, affiliates, key employees, and professionals. In this connection, the Committee must understand and evaluate the Debtor's relationships and financial dealings and transfers of property prior to and after the Petition Date. It is only with this information that the Committee may (a) properly evaluate any potential claims and causes of action that may exist, and (b) identify the steps that it should take to preserve and realize the value of these assets for the benefit of creditors. This clearly presents a "matter which may affect the administration of the debtor's estate" under Bankruptcy Rule 2004(b).

## WAIVER OF MEMORANDUM OF LAW

13.     Because this Motion does not present any novel issues of law and the appropriate citations relied on by the Committee are cited herein, the Committee respectfully requests that the Court waive the requirement for the filing of a separate memorandum of law in support of this Motion under Local Bankruptcy Rule 9013-1.

## NOTICE

14.     Copies of this Motion will be sent via United States First Class Mail, postage pre-paid, to (i) counsel for the Debtor, (ii) the Office of the United States Trustee for the Eastern District of New York (Attn:  Valerie Millman, Esq.), and (iii) the persons subject to discovery identified on Exhibit A hereto.

## PRIOR REQUEST FOR RELIEF

15.     No previous application for the relief sought herein has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests entry of the attached proposed Order.


Dated:  New York, New York
            February 6, 2009

KELLEY DRYE & WARREN LLP

By: /s/ *James S. Carr*
      James S. Carr (JC-1603)
      Craig A. Wolfe (CW-2641)
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

Proposed Attorneys for the Official Committee of
Unsecured Creditors of Acme Cake Co., Inc.

## EXHIBIT A

**Persons Requested to Submit to Oral Examinations and Produce Documents**

| Person and Address | Relationship to Debtor |
|---|---|
| Acme Cake Co., Inc.<br>374 Johnson Avenue<br>Brooklyn, NY 11206 | Debtor |
| William G. Wenzel<br>3968 Anne Drive<br>Seaford, NY 11783-1709<br>and/or<br>374 Johnson Avenue<br>Brooklyn, NY 11206 | 25% equity holder with 50% voting power. |
| Debra Wenzel<br>374 Johnson Avenue<br>Brooklyn, NY 11206 | 25% equity holder |
| Thomas Semon<br>1269 Pleasant Road<br>Wantagh, NY 11793-2640 | 25% equity holder with 50% voting power. |
| Patricia Semon<br>1269 Pleasant Road<br>Wantagh, NY 11793 | 25% equity holder |
| Johnny Tapia<br>97-22 57th Avenue, 15J<br>Corona, NY 11368-3519 | Key employee and proposed holder of equity in the reorganized Debtor under the Plan |
| Gail Fanny<br>1293 Allen Drive<br>Seaford, NY | Sister to William Wenzel and Bookkeeper at Debtor |
| Stuart Edelstein Linderman & Co.<br>2088 Newbridge Road<br>Bellmore, NY | Debtor's accountants |
| Frank Stampfl[1]<br>63-41 61st St.<br>Ridgewood, NY 11385-2630 | Key employee |
| Junior Alvarez[2]<br>c/o Acme Cake Co., Inc.<br>374 Johnson Avenue<br>Brooklyn, NY 11206 | Key employee |

---

[1] This person will only be subject to examination, and not to any document requests.

[2] This person will only be subject to examination, and not to any document requests. The Committee is also working to confirm the spelling of this person's name.

# **EXHIBIT B**

**Form Subpoena**
**Topics of Examinations and Document Requests**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

IN RE:

**ACME CAKE CO., INC.,**                    **SUBPOENA FOR RULE 2004 EXAMINATION**

    **Debtors.**                    **Case No. 108-41965-608**

To:    **ACME CAKE CO., INC.**
       **c/o Weinberg, Gross & Pergament LLP**
       **400 Garden City Plaza, Suite 403**
       **Garden City, New York 11530**

☑    YOU ARE COMMANDED to appear pursuant to a court order issued under Rule 2004, Fed.R.Bankr.P., at the place, date, and time specified below to testify at the taking of a deposition in the above case, which deposition will be recorded both stenographically and by videotape.  The topics of the examination pursuant to Fed.R.Bankr.P. 7030 are annexed as Schedule A.

| PLACE: | **Kelley Drye & Warren LLP**<br>**101 Park Avenue**<br>**New York, NY 10178** | DATE AND TIME<br>**March __, 2009 at**<br>**10:00 a.m.** |
|---|---|---|

☑    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### SEE ATTACHED SCHEDULE B

| PLACE | **Kelley Drye & Warren LLP**<br>**101 Park Avenue**<br>**New York, NY 10178** | DATE AND TIME<br>**March __, 2009 at**<br>**10:00 a.m.** |
|---|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing officer signature and title (indicate if attorney for plaintiff or defendant)<br><br>    **Attorney for the Official Committee of Unsecured Creditors** | DATE<br>**February __, 2009** |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER<br>**Craig A. Wolfe**<br>**Kelley Drye & Warren LLP**<br>**101 Park Avenue**<br>**New York, NY  10178**<br>**(212) 808-7800** | |

# PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
| | |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
| | |

# DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|------|---------------------|
| | |
| | ADDRESS OF SERVER |

## Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises – or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## SCHEDULE A
## DEFINITIONS

1.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Concerning" means relating to, referring to, describing, evidencing or constituting.

3.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronically stored information.  A draft or non-identical copy is a separate document within the meaning of this term.

4.      "Person" is defined as any natural person or any business, legal or governmental entity or association.

5.      "Relating to" or "in connection with" mean concerning, referring to, pertaining to, containing, describing, reflecting, regarding, illustrating, mentioning, evidencing, embodying, constituting, supporting, discussing or having any logical or factual connection whatsoever with the subject matter in question.

6.      "Acme", "You" or "Your" means Acme Cake Co., Inc. and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by Acme, including, without limitation, Acme, and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

7.      "Products" means any baked goods or other products including, but not limited to, danishes, donuts, doughnuts, or other items, made, produced, offered for sale, sold, or other disposed of by Acme.

8.     "Case" means the case captioned *In re Acme Cake Co., Inc.*, Case No. 108-41965-608, currently pending in the United States Bankruptcy Court for the Eastern District of New York.

9.     "Debtor" means Acme and/or any other person or entity who and/or that filed a petition for bankruptcy protection in the Case.

10.     "Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee on or about May 9, 2008, and all of the members, officers, directors, employees, representatives, agents, attorneys, and advisers of the foregoing.

11.     "Petition Date" means April 2, 2008.

12.     "Bill Wenzel" means William J. Wenzel and his family including, but not limited to, Debra Wenzel, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Wenzel, any Person acting for or on behalf of or at the request of Wenzel, or any Person under Wenzel's authority or control.

13.     "Debra Wenzel" means Debra Wenzel and her family including, but not limited to, Bill Wenzel, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Debra Wenzel, any Person acting for or on behalf of or at the request of Debra Wenzel, or any Person under Debra Wenzel's authority or control.

14.     "Wenzel" means Bill Wenzel and Patricia Wenzel and their family including, but not limited to, Bill and Debra Wenzel, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Bill Wenzel or Debra Wenzel, any Person acting for or on behalf of or at the request of Bill

Wenzel or Debra Wenzel, or any Person under Bill Wenzel's or Debra Wenzel's authority or control.

15. "Fanny" means Gail Fanny and her family as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Fanny, any Person acting for or on behalf of or at the request of Fanny, or any Person under Fanny's authority or control.

16. "Tapia" means Jonny Tapia and his family as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Tapia, any Person acting for or on behalf of or at the request of Tapia, or any Person under Tapia's authority or control.

17. "Tom Semon" means Thomas Semon and his family including, but not limited to, Patricia Semon, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Tom Semon, any Person acting for or on behalf of or at the request of Tom Semon, or any Person under Tom Semon's authority or control.

18. "Patricia Semon" means Patricia Semon and her family including, but not limited to, Tom Semon, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Patricia Semon, any Person acting for or on behalf of or at the request of Patricia Semon, or any Person under Patricia Semon's authority or control.

19. "Semon" means Tom and Patricia Semon and their family including, but not limited to, Tom and Patricia Semon, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Tom

Semon or Patricia Semon, any Person acting for or on behalf of or at the request of Tom Semon or Patricia Semon, or any Person under Tom Semon's or Patricia Semon's authority or control.

20. "<u>Johnson Ave. Corp.</u>" means 374-384 Johnson Ave. Corp. and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by Johnson Ave. Corp., including, without limitation, Johnson Ave. Corp., and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

21. "<u>Ingraham Street Properties</u>" means the land, building(s), and improvements located at 19 Ingraham Street and 21 Ingraham Street, Brooklyn, New York (Block 3075, Lots 31 and 32).

22. "<u>B&T</u>" means B&T Properties, Inc. and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by B&T, including, without limitation, B&T, and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

23. "<u>Johnson Avenue Properties</u>" means the land, building(s), and improvements located at 386-392 Johnson Avenue, Brooklyn, New York.

24. "<u>Stuart</u>" means Stuart, Linderman & Co., Inc. and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by Stuart, including, without limitation, Stuart, and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

25.     "Accountants" means any Person that has been (or was or is currently) retained by Acme to prepare Acme's tax returns, audit Acme's financial statements, or provide any advice to Acme regarding its tax returns or finances including, but not limited to, Stuart.

26.     "Advantage" means Advantage Food Marketing Corp. and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by Advantage, including, without limitation, Advantage, and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

27.     "Accounts" means any and all accounts in the name of or for the benefit of Acme held at any financial institution from January 1, 2000 to the present including, but not limited to, the account held at JPMorgan Chase Bank, N.A. that is identified in the Monthly Operating Statements that have been filed in the Case, the pre-petition account held at Smith Barney, and any pension accounts for the benefit of Acme's directors, officers or employees.

28.     "Union" shall mean Local 3 of The Bakery, Confectionery, Tobacco Workers and Grain Miller International Union and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by the Union, including, without limitation, the Union, and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

29.     "CBA" means the Collective Bargaining Agreement between Acme and the Union, effective November 29, 2005, and any amendments, extensions, alterations, other modifications of the CBA, or replacement or substitute collective bargaining agreement(s).

30.    "<u>Pension Obligations</u>" means any and all obligations that are currently owed or may be owed to the Union or any other Person by Acme including, without limitation, any actual or potential withdrawal liability.

## RULES OF CONSTRUCTION

1.    "<u>All/Each</u>".  The terms "all" and "each" shall be construed as all and each.

2.    "<u>And/Or</u>".  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise by construed to be outside of its scope.

3.    "<u>Number</u>".  The use of the singular form of any word includes the plural and vice versa.

4.    Unless otherwise defined herein, each word or term shall have the meaning ascribed to it in Webster's Ninth New Collegiate Dictionary.

## TOPICS OF EXAMINATION

1.    The discussions, decision and/or vote to commence the Case.

2.    The ownership of Acme including, but not limited to, the ownership structure, Wenzel's purported interests in Acme, Fanny's purported interests in Acme, and Semon's purported interests in Acme.

3.    Acme's operations and financial condition from January 1, 2000 to the present including, without limitation, the following areas of such operations:

(a)    Products including, but not limited to, the purchase of the materials for the Products and the sale of the Products;

(b)    inventory;

(b)    cost of goods sold;

(c)    selling, general & administrative expenses including, but not limited to, all of the expenses identified in Acme's Monthly Operating Statements filed in the Case;

(d)    purchase orders;

(e)     invoices and the generation of invoices;

(f)     Acme's internal financial and/or accounting systems including, but not limited to, its use of any financial or accounting software (such as "Peachtree", "Quickbooks", etc.)

(g)     receipts for payments including, but not limited to, payments in cash from customers;

(h)     accounts receivable;

(i)     accounts payable;

(j)     loans to Acme;

(k)     loans provided by Acme to any customers or employees;

(l)     contracts or agreements between Acme and any Person including, but not limited to, Advantage and any payments to any Person under any such contracts or agreements including, but not limited to, Advantage;

(m)     transactions between Acme and any other Person including, but not limited to, any purported transactions involving Wenzel, Fanny, Johnson Ave. Corp., Semon, or B&T;

(n)     appraisals concerning or relating to Acme, the Ingraham Street Properties and/or the Johnson Avenue Properties; and

(o)     recordings of any premises, buildings, land or other location in which Acme operates including, but not limited to, any surveillance tapes or videos.

4.     The Accounts.

5.     The books and records of Acme.

6.     The Union.

7.     The CBA including, but not limited to, any negotiations, discussions, correspondence, or other documents or communications relating to the CBA.

8.     The Pension Obligations.

9.     B&T.

10.     Johnson Ave. Corp.

11.   Any transactions concerning or relating to the Ingraham Street Properties or the Johnson Avenue Properties.

12.   Wenzel's involvement and role in Acme including, but not limited to, Wenzel's involvement and/or role in budgeting, managing, administering, running, overseeing or otherwise operating Acme.

13.   Semon's involvement and role in Acme including, but not limited to, Semon's involvement and/or role in budgeting, managing, administering, running, overseeing or otherwise operating Acme.

14.   Fanny's involvement and role in Acme including, but not limited to, Fanny's involvement and/or role in budgeting, managing, administering, running, overseeing or otherwise operating Acme.

15.   Tapia's involvement and role in Acme including, but not limited to, Tapia's involvement and/or role in budgeting, managing, administering, running, overseeing or otherwise operating Acme.

16.   Accountants retained by or employed by Acme and any review of Acme's financial statements and books and records from 2000 to the present.

17.   Opinion letters including, without limitation, any opinion letters issued by legal counsel and/or any investment banks, financial institutions or Accountants concerning:

    (a)   Acme;

    (b)   any loans to Acme;

    (c)   any loans from Acme to any Person;

    (d)   the purported decision and/or vote to commence the Case;

    (e)   any transactions between Acme and any other Person including, but not limited to, any purported transactions involving Wenzel, Fanny, Johnson Ave. Corp., Semon, or B&T;

    (f)   any accounting or financial systems; and

    (g)   Acme's operations.

18.   Discussions with any investment banks, financial institutions and/or accounting firms concerning any engagements relating to any acquisitions or divestures or the capital structure of Acme.

19.   The Board of Directors of Acme.

20. Discussions between and among the Debtor's creditors, on the one hand, and Acme, on the other hand, prior to the commencement of the Case.

21. Acme's tax returns for 2000 to the present.

22. The Disclosure Statement, dated November 25, 2008, that was filed in the Case

23. The proposed Plan of Reorganization that was filed in the Case on or about November 26, 2008.

24. Document retention or destruction policies and compliance with this Subpoena.

1.      "<u>Communication</u>" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "<u>Concerning</u>" means relating to, referring to, describing, evidencing or constituting.

3.      "<u>Document</u>" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronically stored information.  A draft or non-identical copy is a separate document within the meaning of this term.

4.      "<u>Person</u>" is defined as any natural person or any business, legal or governmental entity or association.

5.      "<u>Relating to</u>" or "<u>in connection with</u>" mean concerning, referring to, pertaining to, containing, describing, reflecting, regarding, illustrating, mentioning, evidencing, embodying, constituting, supporting, discussing or having any logical or factual connection whatsoever with the subject matter in question.

6.      "<u>Acme</u>", "<u>You</u>" or "<u>Your</u>" means Acme Cake Co., Inc. and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by Acme, including, without limitation, Acme, and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

7.      "<u>Products</u>" means any baked goods or other products including, but not limited to, danishes, donuts, doughnuts, or other items, made, produced, offered for sale, sold, or other disposed of by Acme.

8.  "Case" means the case captioned *In re Acme Cake Co., Inc.*, Case No. 108-41965-608, currently pending in the United States Bankruptcy Court for the Eastern District of New York.

9.  "Debtor" means Acme and/or any other person or entity who and/or that filed a petition for bankruptcy protection in the Case.

10. "Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee on or about May 9, 2008, and all of the members, officers, directors, employees, representatives, agents, attorneys, and advisers of the foregoing.

11. "Petition Date" means April 2, 2008.

12. "Bill Wenzel" means William J. Wenzel and his family including, but not limited to, Debra Wenzel, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Wenzel, any Person acting for or on behalf of or at the request of Wenzel, or any Person under Wenzel's authority or control.

13. "Debra Wenzel" means Debra Wenzel and her family including, but not limited to, Bill Wenzel, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Debra Wenzel, any Person acting for or on behalf of or at the request of Debra Wenzel, or any Person under Debra Wenzel's authority or control.

14. "Wenzel" means Bill Wenzel and Patricia Wenzel and their family including, but not limited to, Bill and Debra Wenzel, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Bill Wenzel or Debra Wenzel, any Person acting for or on behalf of or at the request of Bill

Wenzel or Debra Wenzel, or any Person under Bill Wenzel's or Debra Wenzel's authority or control.

15. "<u>Fanny</u>" means Gail Fanny and her family as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Fanny, any Person acting for or on behalf of or at the request of Fanny, or any Person under Fanny's authority or control.

16. "<u>Tapia</u>" means Jonny Tapia and his family as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Tapia, any Person acting for or on behalf of or at the request of Tapia, or any Person under Tapia's authority or control.

17. "<u>Tom Semon</u>" means Thomas Semon and his family including, but not limited to, Patricia Semon, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Tom Semon, any Person acting for or on behalf of or at the request of Tom Semon, or any Person under Tom Semon's authority or control.

18. "<u>Patricia Semon</u>" means Patricia Semon and her family including, but not limited to, Tom Semon, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Patricia Semon, any Person acting for or on behalf of or at the request of Patricia Semon, or any Person under Patricia Semon's authority or control.

19. "<u>Semon</u>" means Tom and Patricia Semon and their family including, but not limited to, Tom and Patricia Semon, as well as any corporations, limited liability companies, limited liability partnerships, or other entities owned, in whole or part, or controlled by Tom

Semon or Patricia Semon, any Person acting for or on behalf of or at the request of Tom Semon or Patricia Semon, or any Person under Tom Semon's or Patricia Semon's authority or control.

20.    "<u>Johnson Ave. Corp.</u>" means 374-384 Johnson Ave. Corp. and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by Johnson Ave. Corp., including, without limitation, Johnson Ave. Corp., and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

21.    "<u>Ingraham Street Properties</u>" means the land, building(s), and improvements located at 19 Ingraham Street and 21 Ingraham Street, Brooklyn, New York (Block 3075, Lots 31 and 32).

22.    "<u>B&T</u>" means B&T Properties, Inc. and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by B&T, including, without limitation, B&T, and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

23.    "<u>Johnson Avenue Properties</u>" means the land, building(s), and improvements located at 386-392 Johnson Avenue, Brooklyn, New York.

24.    "<u>Stuart</u>" means Stuart, Linderman & Co., Inc. and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by Stuart, including, without limitation, Stuart, and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

25.     "Accountants" means any Person that has been (or was or is currently) retained by Acme to prepare Acme's tax returns, audit Acme's financial statements, or provide any advice to Acme regarding its tax returns or finances including, but not limited to, Stuart.

26.     "Advantage" means Advantage Food Marketing Corp. and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by Advantage, including, without limitation, Advantage, and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

27.     "Accounts" means any and all accounts in the name of or for the benefit of Acme held at any financial institution from January 1, 2000 to the present including, but not limited to, the account held at JPMorgan Chase Bank, N.A. that is identified in the Monthly Operating Statements that have been filed in the Case, the pre-petition account held at Smith Barney, and any pension accounts for the benefit of Acme's directors, officers or employees.

28.     "Union" shall mean Local 3 of The Bakery, Confectionery, Tobacco Workers and Grain Miller International Union and all of its parents, subsidiaries, affiliates, partnerships, partners, control groups, control group members, predecessors, successors, and all entities and funds directly or indirectly owned or controlled, in whole or in part, by the Union, including, without limitation, the Union, and all of the officers, directors, shareholders, employees, representatives, agents, attorneys, and advisers of the foregoing.

29.     "CBA" means the Collective Bargaining Agreement between Acme and the Union, effective November 29, 2005, and any amendments, extensions, alterations, other modifications of the CBA, or replacement or substitute collective bargaining agreement(s).

30.     "Pension Obligations" means any and all obligations that are currently owed or may be owed to the Union or any other Person by Acme including, without limitation, any actual or potential withdrawal liability.

## RULES OF CONSTRUCTION

1.     "All/Each".  The terms "all" and "each" shall be construed as all and each.

2.     "And/Or".  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise by construed to be outside of its scope.

3.     "Number".  The use of the singular form of any word includes the plural and vice versa.

4.     Unless otherwise defined herein, each word or term shall have the meaning ascribed to it in Webster's Ninth New Collegiate Dictionary.

## GENERAL INSTRUCTIONS

1.     The provisions of Rules 26 and 34 of the Federal Rules of Civil Procedure, which are made applicable by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, and the provisions of Rule 2004 of the Federal Rules of Bankruptcy Procedure are incorporated by reference.

2.     The Document Requests contained in this Subpoena shall be interpreted to be inclusive rather than exclusive.

3.     In answering the Document Requests contained in this Subpoena, You are required not only to furnish such information as You know of Your own personal knowledge, but also to furnish information that is in the possession of your past and present:  attorneys, agents, accountants, investigators, or anyone acting on your behalf or their behalf, except to the extent that such information is privileged.

4.      Each of these Document Requests shall be construed independently and not be referenced to any other Document Request for the purpose of limitation.

5.      Each Document Request shall be answered fully unless it is in good faith objected to, in which event the objection shall state with specificity all grounds relied upon.  If an objection pertains to only a portion of a Document Request, or a word, phrase, or clause contained therein, you are required to state your objection to that portion only and to respond to the remainder of the Document Requests, using your best efforts to do so.

6.      No part of any Document Request is to be left unanswered merely because an objection is interposed to another part of the request.

7.      If Your answer to any Document Request is qualified in any particular manner, set forth the details of such qualification.

8.      In the event you claim that any information called for in this Subpoena is immune from discovery on the ground of privilege, the information that is set forth in Rule 26 of the Federal Rules of Civil Procedure, which is made applicable by Rule 7026 of the Federal Rule of Bankruptcy Procedure, shall be provided in writing to the undersigned at the same time you respond to this Subpoena.

9.      A complete original or copy of each document or thing must be produced, even though only a portion of such document or thing is responsive to one of the numbered requests contained herein.  Documents shall not be edited, cut, redacted (except where a claim of privilege is asserted with respect to a portion of a document) or expunged and shall include all attachments, appendices, tables and exhibits and all covering memoranda, letters or documents. Things (e.g., computer data tapes) shall not be altered or modified, unless otherwise directed.

10.     Every request herein for a document or documents to be produced contemplates production of the document or documents in their entirety without any amendment, alteration, abbreviation or expurgation, and in a manner and condition in which the document or documents were kept in the ordinary course of business.

11.     Electronically stored information shall be produced in its native format and you should identify all software or programs required in order to view or operate the electronically stored information.

12.     Except for electronically stored information, the documents produced in response to these Document Requests shall be organized and segregated according to the specific numbered requests listed below to which the documents are primarily responsive, and shall identify the source of each document, or if they are being produced in their original form, identify where the document was located, including but not limited to what room, file cabinet and drawer the document was stored in, what persons have access to that area, and produce a copy of the file folder jacket in which the document was contained.

13.     With respect to each document otherwise responsive to this request that is no longer in your custody or control, identify (a) each author; (b) each addressee; (c) the title, date, and subject matter of the document; (d) the last date on which the document was in your control; (e) each person now in control of the document; (f) the reasons for the disposal or release of the document; and (g) each person with any knowledge concerning the document's disposal or release.

14.     With respect to each document otherwise responsive to this request that has been lost, discarded or destroyed, identify (a) each author; (b) each addressee; (c) the date, title and subject matter of the document; (d) the date of the disposal; (e) the manner of the

disposal; (f) the reason for the disposal; (g) each person who authorized the disposal; (h) each person who carried out the disposal; and (i) each person with any knowledge concerning the disposal.

15. Unless otherwise stated, the scope of these Document Requests is from January 1, 1998 through the present and is continuing in nature.

16. You are hereby requested to supplement seasonally your responses to this Request for Production of Documents, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, at the end of each thirty (30) day period, immediately following the filing of the initial answers hereto, based upon any subsequent information received directly or indirectly. For the purpose of Rule 26(e) of the Federal Rules of Civil Procedure, this request is deemed to be a "new request" for each such thirty (30) day period prior to the time of trial.

## DOCUMENT REQUESTS

**Request No. 1:**

All documents, electronically stored information, communications, and things concerning or relating to the formation and incorporation of Acme.

**Request No. 2:**

All documents, electronically stored information, communications, and things concerning or relating to the capitalization of Acme.

**Request No. 3:**

All documents, electronically stored information, communications, and things concerning or relating to the corporate or organizational structure of Acme including, without limitation, the following documents, electronically stored information, communications, and things:

(a) corporate organizational charts;

(b) personnel organizational charts;

(c) lists of the members of Board of Directors of Acme from 1996 to the present;

(d) lists of the Officers of Acme from 1996 to the present;

(e) lists of employees of Acme;

(f) lists of employees of Johnson Ave. Corp.;

(g) lists of employees of B&T;

(h) lists of employees of Acme providing services to Johnson Ave. Corp. and/or B&T; and

(i) lists of equity holders of Acme.

**Request No. 4:**

All documents, electronically stored information, communications, and things concerning or relating to the ownership of Acme including, without limitation, stock certificates, loan agreements, pledge agreements, option agreements, and partnership agreements.

**Request No. 5:**

All documents, electronically stored information, communications, and things concerning or relating to any ownership interest in Acme by any Person including, without limitation, Wenzel and Semon.

**Request No. 6:**

All documents, electronically stored information, communications, and things concerning or relating to any dividends or distributions by Acme to any Person including, without limitation, Wenzel and/or Semon.

**Request No. 7:**

All documents, electronically stored information, communications, and things concerning or relating to any loans by any Person to Acme including, without limitation, loan documents, pledge agreements, option agreements, partnership agreements, financing statements, and any communications with any Person concerning or relating to the foregoing.

**Request No. 8:**

All documents, electronically stored information, communications, and things concerning or relating to the books and/or accounting records of Acme.

**Request No. 9:**

All documents, electronically stored information, communications, and things concerning or relating to Acme's general ledger, cash flow statements, balance sheets, income statements, financial statements, and audited financial statements.

**Request No. 10:**

All documents, electronically stored information, communications, and things concerning or relating to Debtor's income statements from 2000 to the present.

**Request No. 11:**

All documents, electronically stored information, communications, and things concerning or relating to Debtor's cash flow statements from 2000 to the present.

**Request No. 12:**

All documents, electronically stored information, communications, and things concerning or relating to Debtor's balance sheets from 2000 to the present.

**Request No. 13:**

All documents, electronically stored information, communications, and things concerning or relating to Debtor's tax returns from 2000 to the present.

**Request No. 14:**

All documents, electronically stored information, communications, and things concerning or relating to Acme's internal financial and/or accounting systems including, but not limited to, its use of any financial or accounting software including, without limitation, Acme's use of Peachtree and an electronic copy of all of the data contained in Peachtree.

**Request No. 15:**

All documents, electronically stored information, communications, and things concerning or relating to any assets held by Acme at any time from 1998 to the present including, without limitation, the following documents, electronically stored information, communications, and things:

(a)     physical assets;

(b)     accounts receivable;

(c)     any policies, manuals, or memoranda concerning how Acme's assets are and/or were held;

(d)     any policies, manuals, or memoranda concerning how Acme's assets are and/or were divested;

(e)     any policies, manuals, or memoranda concerning how Acme's assets are and/or were distributed;

(f)     any policies, manuals, or memoranda concerning how Acme's assets are and/or were allocated; and

(g)     the transfer of assets from Acme to Wenzel;

(h)     the transfer of assets from Acme to B&T;

(i)     the transfer of assets from Acme to Johnson Ave. Corp.;

(j)     the transfer of assets from Acme to Fanny;

(k)     the transfer of assets from Acme to Tapia; and

(l)     the transfer of assets from Acme to Semon.

**Request No. 16:**

All documents, electronically stored information, communications, and things concerning or relating to the potential or actual acquisition and/or divestiture of any or all of Acme's assets or properties from January 1, 2002 to the present.

**Request No. 17:**

All documents, electronically stored information, communications, and things concerning or relating to any statements made by Acme, Wenzel, or Semon to Acme's shareholders.

**Request No. 18:**

All documents, electronically stored information, communications, and things concerning or relating to Johnson Ave. Corp.

**Request No. 19:**

All documents, electronically stored information, communications, and things concerning or relating to B&T.

**Request No. 20:**

All documents, electronically stored information, communications, and things concerning or relating to the books and/or accounting records of Acme relating to B&T or Johnson Ave. Corp.

**Request No. 21:**

All documents, electronically stored information, communications, and things concerning or relating to any relationship between Acme and Johnson Ave. Corp. including, without limitation, all documents, electronically stored information, communications, and things

concerning or relating to the following:

    (a)     any loans from Acme to Johnson Ave. Corp.;

    (b)     any loans from Johnson Ave. Corp. to Acme;

    (c)     any transactions involving Acme and Johnson Ave. Corp. including, but not limited to, any transactions concerning or relating to the Ingraham Street Properties;

    (d)     any leases, contracts or other agreements between Acme and Johnson Ave. Corp.;

    (e)     any payments or transfers from Acme to Johnson Ave. Corp.;

    (f)     any payments or transfers from Johnson Ave. Corp. to Acme; and

    (g)     any investment or capital infusion by Acme, Wenzel or Fanny in Johnson Ave. Corp.

**Request No. 22:**

All documents, electronically stored information, communications, and things concerning or relating to any relationship between Acme and the Ingraham Street Properties.

**Request No. 23:**

All documents, electronically stored information, communications, and things concerning or relating to any relationship between Acme and B&T including, without limitation, all documents, electronically stored information, communications, and things concerning or relating to the following:

    (a)     any loans from Acme to B&T;

    (b)     any loans from B&T  to Acme;

    (c)     any transactions involving Acme and B&T including, but not limited to, any transactions concerning or relating to the Johnson Avenue Properties;

    (d)     any leases, contracts or other agreements between Acme and B&T;

(e)     any payments or transfers from Acme to B&T;

(f)     any payments or transfers from B&T to Acme; and

(g)     any investment or capital infusion by Acme, Wenzel, Semon or Fanny in

B&T.

**Request No. 24:**

All documents, electronically stored information, communications, and things concerning or relating to any relationship between Acme and the Johnson Avenue Properties.

**Request No. 25:**

All documents, electronically stored information, communications, and things concerning or relating to the Products including, without limitation, all documents, electronically stored information, communications, and things concerning or relating to the following:

(a)     the purchase of the materials for any and all ingredients in the Products including, but not limited to, contracts, agreements, quotations, price quotations, price lists, bidding materials, pricing policies, pricing strategies, order forms, purchase orders, invoices, bills, receipts, bills of lading, shipping receipts, brochures, manuals, and/or communications with any Person;

(b)     the offering for sale of the Products including, but not limited to, contracts, agreements, quotations, price quotations, price lists, bidding materials, pricing policies, pricing strategies, order forms, purchase orders, invoices, bills, receipts, bills of lading, shipping receipts, brochures, manuals, and/or communications with any Person; and

(c)     the sale of the Products including, but not limited to, contracts, agreements, quotations, price quotations, price lists, bidding materials, pricing policies, pricing strategies, order forms, purchase orders, invoices, bills, receipts, bills of lading, shipping receipts, brochures, manuals, and/or communications with any Person.

**Request No. 26:**

All documents, electronically stored information, communications, and things concerning or relating to the cost of goods sold for the Products.

**Request No. 27:**

All documents, electronically stored information, communications, and things concerning or relating to Acme's inventory on each and every day Acme has been open from January 1, 2002 to the present.

**Request No. 28:**

All documents, electronically stored information, communications, and things concerning or relating to Acme's selling, general and administrative expenses from January 1, 2002 to the present.

**Request No. 29:**

All documents, electronically stored information, communications, and things concerning or relating to any Accountants (including, but not limited to, Stuart) including, without limitation, all documents, electronically stored information and things concerning or relating to: any audits by any Accountants; any communications with any Accountants; any reviews of Acme's finances, operations, or Accounts by any Accountants; and Acme's general ledger, cash flow statements, balance sheets, income statements, financial statements, and audited financial statements.

**Request No. 30:**

All documents, electronically stored information, communications, and things concerning or relating to any communications between and among Debtor's creditors, on the one hand, and Acme, on the other hand, prior to the commencement of the Case.

**Request No. 31:**

All documents, electronically stored information, communications, and things concerning or relating to the Accounts including all documents relating to banking activities of Acme, including, without limitation, the following documents, electronically stored information, communications and things:

(d)     a historical list of Acme's bank accounts, investment accounts, cash accounts or any other type of account from 1996 to the present;

(e)     a historical list of the authorized signatories on Acme's bank accounts, investment accounts, cash accounts or any other type of account by title and employer; and

(f)     all bank statements, account statements, deposit slips, deposit receipts, withdrawal slips, withdrawal receipts, cancelled checks, confirmations, and acknowledgments for the Accounts;

**Request No. 32:**

All documents, electronically stored information, communications, and things concerning or relating to any cash flow statements and projections relating to the Accounts from 2000 to the present.

**Request No. 33:**

All documents, electronically stored information, communications, and things concerning or relating to relating to any investment banks, financial institutions, real estate brokers or advisors, and/or Accountants retained in whole or in part by Acme, Wenzel or Semon concerning any potential or actual divestitures or acquisitions of Acme, the Ingraham Street Properties, the Johnson Avenue Properties, or any other assets in which Acme had any interest in from January 1, 1995 through the present.

**Request No. 34:**

All documents, electronically stored information, communications, and things concerning or relating to relating to any appraisals of Acme, the Johnson Avenue Properties or the Ingraham Street Properties.

**Request No. 35:**

All documents, electronically stored information, communications, and things concerning or relating to relating to any applications for any mortgages for the Johnson Avenue Properties or the Ingraham Street Properties.

**Request No. 36:**

All documents, electronically stored information, communications, and things concerning or relating to any investment banks, financial institutions and/or Accountants retained in whole or in part by Acme concerning the capital structure of Acme, Johnson Ave. Corp. or B&T.

**Request No. 37:**

All documents, electronically stored information, communications, and things concerning or relating to the Ingraham Street Properties and/or the Johnson Avenue Properties including, without limitation, any title reports and/or title commitments, title policies, surveys, insurance policies, or insurance claims.

**Request No. 38:**

All documents, electronically stored information, communications, and things concerning or relating to director and officer insurance policies held either by Acme, or by individual officers or directors of Acme.

**Request No. 39:**

All documents, electronically stored information, communications, and things

concerning or relating to the filing of Debtor's bankruptcy petition including, without limitation, the discussions, decision and/or vote to commence the Case.

**Request No. 40:**

All documents, electronically stored information, communications, and things concerning or relating to the purported investigation by Acme into its insiders as represented in the Disclosure Statement filed in the Case.

**Request No. 41:**

All documents, electronically stored information, communications, and things concerning or relating to the amounts of money paid to or purportedly owed to Franklin, Gringer & Cohen, P.C. and any investigation by Acme into any potential claims against Franklin, Gringer & Cohen, P.C.

**Request No. 42:**

All documents, electronically stored information, communications, and things concerning or relating to the dispute with Tom Semon identified in the Disclosure Statement including, but not limited to, any appraisals of Acme, B&T, Johnson Ave. Corp., the Ingraham Street Properties and/or the Johnson Avenue Properties.

**Request No. 43:**

All documents, electronically stored information, communications, and things concerning or relating to the Union including, without limitation, negotiations concerning or relating to the CBA or an extension of the CBA.

**Request No. 44:**

All documents, electronically stored information, communications, and things concerning or relating to the Pension Obligations.

**Request No. 45:**

All documents, electronically stored information, communications, and things concerning or relating to any recordings of any premises, buildings, land or other location in which Acme operates including, but not limited to, any surveillance tapes or videos.

**Request No. 46:**

All documents, electronically stored information, communications, and things concerning or relating to any document retention or document destruction policies of Acme.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| ACME CAKE CO., INC., | Case No. 08-41965 (CEC) |
| Debtor. | |

## ORDER DIRECTING ORAL EXAMINATIONS
## AND PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004

Upon consideration of the Motion of the Official Committee of Unsecured Creditors of

Acme Cake Co., Inc. for Order Directing Oral Examinations and Production of Documents under

Bankruptcy Rule 2004, and it appearing that just cause exists, on this ___ day of February, 2009,

it is hereby

ORDERED that the Motion is **GRANTED** in its entirety; and it is further

ORDERED that the persons listed on Exhibit A to the Motion appear for oral

examinations at _____ on _____ __, 2009 at ___ _.m.; and it is further

ORDERED that the persons listed on Exhibit A to the Motion produce all documents

requested on Exhibit B to the Motion; and it is further

ORDERED that the requirement of filing a separate memorandum of law in support of

the Application pursuant to Local Bankruptcy Rule 9013 is hereby waived; and it is further

ORDERED that this Court shall retain jurisdiction to resolve any issues with respect to

this Order, the requested examinations, and production of documents.

Dated:  February __, 2009


_____
Honorable Carla E. Craig
United States Bankruptcy Judge