UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re

ACME CAKE CO., INC.,

        Debtor.
-------------------------------------------------------------X

Case No. 08-41965-CEC

Chapter 11

# DECISION

APPEARANCES:

| | |
|---|---|
| Marc A. Pergament, Esq. | Mark Frankel, Esq. |
| Weinberg Gross & Pergament LLP | Backenroth Frankel & Krinsky LLP |
| 400 Garden City Plaza | 489 Fifth Avenue |
| Garden City, NY 11530 | New York, NY 10017 |
| Attorneys for the Debtor | Attorneys to the Committee |
| | |
| J. Ted Donovan, Esq. | M. David Graubard, Esq. |
| Goldberg Weprin Finkel Goldstein LLP | Kera & Graubard |
| 1501 Broadway | 240 Madison Ave., 7th Floor |
| 22nd Floor | New York, NY 10016 |
| New York, NY 10036 | Attorneys for Sabatini Frozen Foods, LLC |
| Former Counsel to the Committee | |
| | |
| Craig A. Wolfe, Esq. | Alicia M. Leonhard, Esq. |
| Kelley Drye & Warren LLP | Office of the United States Trustee |
| 101 Park Avenue | 271 Cadman Plaza East |
| New York, NY 10178 | Suite 4529 |
| Former Counsel to the Committee | Brooklyn, NY 11201 |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

Before this Court are the fee applications of the professionals retained in this case, and the motion of Kelley Drye & Warren ("Kelley Drye"), former counsel to the Committee of Unsecured Creditors (the "Committee"), to appoint a Chapter 11 trustee or convert this case to one under chapter 7. Also before the Court is the pending request of Sabatini Frozen Foods LLC ("Sabatini") to dismiss this case with prejudice.

## Background

On April 2, 2008, Acme Cake Co., Inc. (the "Debtor") filed a voluntary petition under chapter 11 of the Bankruptcy Code after a jury verdict was rendered in favor of Sabatini in excess of $1.7 million. The bankruptcy petition was filed prior to entry of the judgment.

On April 30, 2008, the Court authorized the retention of Weinberg, Gross & Pergament LLP as Debtor's counsel. Thereafter, on March 17, 2009, the firm was awarded interim fees of $52,059.83, subject to a 20% holdback, and expenses of $3,452.60.

On May 9, 2008, the United States Trustee filed a notice of appointment of the Committee. Sabatini is chair of the Committee.

On May 12, 2008, the Court authorized the retention of Stuart, Edelstein, Linderman & Co, Inc. ("Stuart Edelstein") as accountants for the Debtor. On March 17, 2009, the accountants were awarded interim fees of $25,275, subject to a 20% holdback.

On June 4, 2008, the Court authorized the retention of Finkel Goldstein Rosenbloom & Nash, LLP[1] ("Finkel Goldstein") as attorneys for the Committee.

On July 28, 2008, the Court authorized the retention of Franklin, Gringer & Cohen, P.C. ("Franklin Gringer") as special counsel to the Debtor for the purposes of prosecuting the appeal

---

[1] This firm is now known as Goldberg Weprin Finkel Goldstein LLP.

of Sabatini's judgment and representing the Debtor in labor relations matters.  On March 17, 2009, Franklin Gringer was awarded interim fees of $9,210, subject to a 20% holdback, and expenses of $171.22.

On February 20, 2009, the Court authorized the retention of Kelley Drye as counsel to the Committee, nunc pro tunc to November 20, 2008, replacing Finkel Goldstein.  Thereafter, on June 12, 2009, Kelley Drye filed an interim fee application seeking fees of $132,446 and reimbursement of expenses of $3,507.86.

Six months after the Court approved Kelley Drye's retention, on August 19, 2009, the Court authorized the retention of Backenroth, Frankel & Krinsky, LLP ("Backenroth Frankel") as counsel to the Committee, nunc pro tunc to July 10, 2009, replacing Kelley Drye.

On August 25, 2009, Kelley Drye filed its second fee application seeking payment of fees totaling $29,990.50 and reimbursement of expenses of $787.62.

On May 25, 2010, Backenroth Frankel filed a final fee application seeking approval of fees totaling $60,116 and reimbursement of expenses of $1,373.14.

On May 27, 2010, the Debtor filed a motion seeking final approval of (1) Debtor's counsel's fees of $233,260.25 and reimbursement of expenses of $9,397.60; (2) Franklin Gringer's fees of $17,426.88; and (3) Stuart Edelstein's fees of $52,206.40.

On June 11, 2010, Goldberg Weprin Finkel Goldstein LLP (formerly Finkel Goldstein) filed its final fee application seeking fees of $17,791.50 and reimbursement of expenses of $270.39.

These fee applications have been adjourned since their initial hearing dates.

On July 21, 2010, Sabatini filed a motion to dismiss this case, which came before the Court on August 11, 2010.  Sabatini argued that cause existed to dismiss this case pursuant to §

1112(b) because the Debtor failed to file a confirmable plan. The most recent plan had proposed to pay unsecured creditors 2%. Sabatini, which dominates the class of unsecured creditors with a claim in excess of $1.7 million, stated that it will not vote to accept a plan unless it is satisfied with the amount to be paid to unsecured creditors, and the proposed distribution was unacceptable. Therefore, there was no impaired accepting class of creditors necessary to confirm the plan, as required by § 1129(a)(10) of the Bankruptcy Code.[2]

Sabatini asserted that additional grounds existed to support dismissal. Specifically, Sabatini contended that that the Debtor suffered continuing losses, and has no reasonable likelihood of reorganization. Sabatini also argued that the Debtor cannot sell the assets pursuant to a plan, as the Debtor proposed, because the Debtor's board had not approved the sale. Therefore, according to Sabatini, any sale would violate applicable N.Y. state law. Lastly, Sabatini argued that the Debtor's delay in proposing a confirmable plan was also grounds to dismiss this case.

On August 11, 2010, the Court determined that cause existed under § 1112 to dismiss or convert the case because the Debtor failed to propose a confirmable plan, and because of the uncontested facts that the estate was administratively insolvent and was suffering continuing losses. The Court also noted that the Debtor abandoned any effort to reorganize by filing an application to convert the case to one under chapter 7.

The Court noted that § 1112(b)(1) requires the Court to dismiss or convert the case, whichever is in the best interests of creditors and the estate, where cause exists. The Court concluded that dismissal, as opposed to conversion, was in the best interest of creditors and the estate because, upon conversion and liquidation of the Debtor's assets, the only parties that stood

---

[2] All references to statutory provisions herein are to sections of title 11, U.S.C.

to receive distributions were the chapter 7 trustee, his professionals, if any, and the holders of administrative claims in the chapter 11 case. Therefore, unsecured creditors would not receive any distribution upon conversion. The Court noted that the interests of administrative claimants were not being considered, because §1112(b) limits the Court's consideration to the interests of creditors and the estate, and holders of administrative claims, with certain exceptions not relevant here, are not creditors as defined in § 101(10). Section §1112(b) does not require the Court to consider the best interest of all parties in interest. (See Tr.[3] 8/11/10).

For these reasons, the Court granted Sabatini's motion to dismiss this case, and directed Sabatini to settle an order consistent with the Court's decision. After this oral ruling was issued, Sabatini requested that the dismissal be with prejudice. The Court denied that request because it was not sought in Sabatini's motion.

The next day, Sabatini settled an order dismissing the case with prejudice. The Debtor and Kelley Drye submitted counter-orders. The Debtor's proposed order provided for the dismissal without prejudice. Kelly Drye's order provided that, pursuant to § 349(b)(3), the assets not revest with the Debtor upon dismissal, so that the Court decide the pending fee applications and so that the professionals would be paid prior to revesting of the assets.

On August 26, 2010, a hearing was held to consider the competing orders. After some discussion, and with the consent of Kelley Drye, the Court decided to defer the entry of an order dismissing the case until the fee applications were heard, and the Court set a hearing date for the fee applications. At that hearing, Kelley Drye agreed that the purpose of the later hearing, which it had requested, would be to fix the amount of the fees of the professionals under § 330, but that the fees would not be paid prior to dismissal. (Tr. 8/26/10, pp. 16, 22.)

---

[3] "Tr." refers to the transcript of the hearing held on the date specified which appears on the Court's docket.

On September 30, 2010, Kelley Drye filed a motion to appoint a chapter 11 trustee or to convert the case. Sabatini and the United States Trustee (the "U.S. Trustee") oppose the motion.

## Discussion

This Court will first address the pending fee applications.

Pursuant to § 330, the court may award "reasonable compensation" to professionals that were retained by the debtor in possession or the Committee "for actual, necessary services." 11 U.S.C. § 330. Services are necessary if they were "reasonably likely to benefit the estate." In re Kohl, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009). An objective test is used, and examines whether a reasonable attorney would have performed those services under the same circumstances. Id. (citing In re Ames Dep't Stores, Inc., 76 F.3d 66 (2d Cir. 1996)). The professionals bear the burden of establishing the reasonableness of their fee applications. In re Bennet Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

Finkel Goldstein sought a final award of fees totaling $17,791.50 and expenses of $270.39. In the absence of objection, and because the firm's application establishes that the services rendered were actual and necessary, the fees of that firm are fixed in this case at $17,791.50, and its expenses are fixed at $270.39.

The Debtor's counsel filed a letter withdrawing its fee application. Sabatini objected to counsel's withdrawal of its fee application, arguing that, pursuant to Bankruptcy Rule 7041 and Rule 41 of the Federal Rules of Civil Procedure, which are applicable to this contested matter pursuant to Bankruptcy Rule 9014, withdrawal of the fee application may only be accomplished by stipulation or by Court order. First, this Court notes that Bankruptcy Rule 9014 states that Rule 7041 applies, unless the court orders otherwise. It is in this Court's discretion to permit Debtor's counsel to withdraw its fee application in the absence of Sabatini's consent or a court

order. Alternatively, this Court can issue an order authorizing the withdrawal of the fee application. In either event, this Court will not require Debtor's counsel to seek an order fixing its fees in this case; it would seem that little purpose is to be served by such an exercise. This is without prejudice to Sabatini's assertion in a court of competent jurisdiction of its alleged claims against Debtor's counsel under New York law.

Franklin Gringer, as Debtor's special counsel, seeks fees of $17,426.88. The U.S. Trustee objected, arguing that the firm did not provide a narrative summary of its services and did not organize its time records into project categories as required by the U.S. Trustee's guidelines. Therefore, the U.S. Trustee requests that Franklin Gringer's fee application be denied it its entirety.

Stuart Edelstein, as Debtor's accountant, seeks fees of $52,206.40. The U.S. Trustee objected because some of Stuart Edelstein's time entries are vague, and only contain the description "review papers." Therefore, the U.S. Trustee seeks disallowance of $9,850 of the fees requested, which amount corresponds to the vague entries. The U.S. Trustee noted that Stuart Edelstein mistakenly included $145.04 in its request for fees, although this amount was incurred as an expense for courier services.

Bankruptcy Rule 2016 requires parties seeking compensation and reimbursement of expenses from the estate to provide a detailed statement of the services rendered, time expended, and expenses incurred. Local Rule 2016-1 further requires the professional to comply with the U.S. Trustee's guidelines, which require, in part, that all fee applications "include sufficient detail to demonstrate compliance with the standards set forth in 11 U.S.C. § 330." This includes arranging time entries into project categories and providing a narrative describing each project, its necessity to the estate, and its status.

The U.S. Trustee's objections to Franklin Gringer and Stuart Edelstein's fee applications are sustained. Because Franklin, Gringer did not comply with the applicable rules and standards, its fee application is denied. Stuart Edelstein's fee application is granted in part, and its fees are fixed in this case at $42,211.36, its fees are disallowed in the amount of $9,850, and its expenses are fixed at $145.04.

Backenroth Frankel seeks an award of fees in the amount of $60,116 and reimbursement of expenses of $1,373.14. While the U.S. Trustee has no objection to this fee request, John Sabatini, the managing member of Sabatini, filed an objection. This objection is essentially a personal attack on the firm's attorney handling this case, which is not a sufficient basis to deny the application. Therefore, because the services of Backenroth Frankel were reasonably likely to benefit the estate at the time they were rendered as set forth in the application, the compensation and reimbursement of expenses of the firm are fixed in this case at the amounts requested.

The final, and most heavily contested, fee application is that of Kelley Drye, which seeks fees totaling $162,436.50 and reimbursement of expenses of $4,295.48.

John Sabatini, on behalf of Sabatini, objects to Kelley Drye's fee application on several grounds. First, he argues that, although the application to retain Kelley Drye contains his electronic signature in his capacity as president of Sabatini and chairman of the Committee, he never actually signed the application nor did he discuss Kelley Drye's hourly fees. Essentially, Mr. Sabatini argues that Kelley Drye was never properly retained by the Committee. Therefore, he requests that Kelley Drye's fee application be denied.

This objection is unpersuasive. Kelley Drye represented the Committee for more than seven months, and at no point did Sabatini, or any other member of the Committee, dispute the retention. Sabatini did not seek to vacate the order approving the retention of Kelley Drye,

which would have been the appropriate response to any unauthorized retention, rather than objecting to fees more than a year and a half after the retention order was entered. Therefore, Sabatini's assertion that Kelley Drye was not properly retained must be rejected.

Sabatini also argues that, on June 3, 2009, Kelley Drye requested that this Court refer the Committee and the Debtor to mediation, without authorization from the Committee. However, the excerpts from the transcript provided by Sabatini do not support the contention that Kelley Drye requested mediation. Rather, it appears that the Debtor first suggested mediation and Kelley Drye, on behalf of the Committee consented. Even if this consent was without the Committee's authorization, this Court had the authority to direct the parties to mediation. Therefore, whether Kelley Drye obtained the Committee's consent beforehand is irrelevant to whether the referral to mediation was proper. It is also irrelevant to the determination whether Kelley Drye's fee application satisfies the requirements of § 330.

Sabatini also argues that Kelley Drye misrepresented to the Court that the Committee was rendered ineffective by Sabatini, and contends that the decisions to replace counsel were made by the entire Committee, and not just Sabatini. This, also, is not a basis to deny compensation, because it has no bearing on whether Kelley Drye's fee application satisfies the requirements of § 330.

The U.S. Trustee argues that $93,949 of Kelley Dry's requested fees should be denied because the services rendered did not benefit the estate. The U.S. Trustee asserts that Kelley Drye spent too much time on discovery and litigation, which led to no viable claims against insiders, rather than focusing on "more important matters," such as whether a plan could be confirmed in this case. Similarly, Sabatini argues that the fees sought are disproportionate to the

9

benefit, if any, received from the services because Kelley Drye never commenced any actions on behalf of the Committee.

In response to these substantive objections, and in the interest of expediting the resolution of this matter, Kelley Drye has agreed to voluntarily reduce its fees and expenses by 20%.

The objections asserted by the U.S. Trustee and Sabatini focus on the results achieved from Kelley Drye's services. This is not the proper method to determine reasonableness of compensation under § 330. As one court recently noted, "in evaluating the award of professional fees, courts objectively consider whether the services rendered were reasonably likely to benefit the estate from the perspective of the time when such services were rendered." In re Value City Holdings, Inc., Case No. 08-14197-JMP, 2010 WL 3705285, at *3 (Bankr. S.D.N.Y. Sept. 22, 2010). Reasonableness of services is not determined through hindsight. Id. at *4.

In this case, Kelley Drye pursued discovery in connection with possible claims against insiders in an effort to benefit the estate. The fact that no actions resulted from these services do not lead to the conclusion that they were unreasonable when performed. Additionally, the existence of other tasks to focus on, such whether the Debtor could propose a confirmable plan, does not result in the conclusion that the services rendered were unreasonable and unnecessary.

Because the services rendered by Kelley Drye appear to have been generally reasonable at the time they were performed, the Court will fix Kelley Drye's fees and expenses at the amounts sought, less the 20% voluntary reduction.

The next matter before the Court is Kelley Drye's motion to appoint a chapter 11 trustee or to convert this case. Kelley Drye argues that, pursuant to § 1104(a), it is in the interests of creditors and other interests of the estate to appoint a chapter 11 trustee, or to convert the case pursuant to § 1112(b) so that an independent, disinterested trustee can evaluate situation, and

decide whether it is beneficial to sell the estate's assets, commence litigation against insiders and other parties, or abandon the assets.

Kelley Drye argues that dismissal of the case will lead to the unfair result of permitting Sabatini "to race to the Debtor's assets by enforcing its right in state court, in direct contravention of the Bankruptcy Code. That would indeed give Sabatini an unfair advantage while leaving other creditors, including those creditors who have a payment priority in bankruptcy, to take nothing." (Mot. of Kelley Drye to Appoint a Chapter 11 Trustee or Alternatively, Convert the Case to Chapter 7, p. 4.)

Given the Court's prior determination that cause existed under § 1112(b) to dismiss or convert this case, and that dismissal was in the best interests of creditors and the estate, Kelley Drye's motion is, in substance, a motion seeking reconsideration of that prior ruling.

The U.S. Trustee and Sabatini oppose Kelley Drye's motion, and argue that Kelley Drye has not satisfied the standard for reconsideration, which requires a movant to show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). They argue that Kelley Drye failed to oppose Sabatini's prior motion, either in writing or orally at the August 11 hearing on Sabatini's motion to dismiss the case, and that all of the arguments now being raised could have, and should have, been raised at or before that hearing.

Kelley Drye explains that it did not oppose Sabatini's motion because it thought the Court was going to grant the Debtor's pending motion to convert the case to one under chapter 7. This excuse must be rejected. The fact that Kelley Drye incorrectly predicted how this Court was going to decide Sabatini's motion, and therefore made a strategic decision not to file

opposition, is not a sufficient excuse for failing to oppose Sabatini's motion, or grounds to permit Kelley Drye now to seek reconsideration.

All of the arguments now being raised by Kelley Drye could have been raised at the hearing on Sabatini's motion. At that point, Kelley Drye knew that it held an administrative claim against the estate which would not be paid upon dismissal. This Court notes that Kelley Drye not only failed to submit written opposition prior to the hearing, it also appeared at the hearing and was given the opportunity to be heard. Kelley Drye did not voice any opposition to dismissal once it became apparent that the Court was going to decide the motion, notwithstanding the Debtor's application to convert the case. A motion for reconsideration "is not intended to be a vehicle for a party dissatisfied with a court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided." Cordero v. Astrue, 574 F. Supp.2d 373, 380 (S.D.N.Y. 2008).

Kelley Drye argues that it would be manifestly unjust to dismiss this case because it would give Sabatini a head start in the race to the Debtor's assets, leaving administrative expenses unpaid. Kelley Drye contends that this result is at odds with the provisions of the Bankruptcy Code.

These arguments must be rejected. Section 1112 requires conversion or dismissal, whichever is in the best interests of creditors and the estate, if the movant establishes cause. It is undisputed that cause exists to convert or dismiss the case. And, as this Court noted in August, when considering the best interest of creditors of the estate, the interests of holders of administrative claims are not considered because they are not "creditors" as defined by

§ 101(10), subject to certain exceptions not relevant here.   Although Kelley Drye initially took the position that the "estate" includes the assets of the Debtor subject to the liabilities, and therefore the Court must consider the interest of the professionals, it appears that Kelley Drye has abandoned this argument.  In any event, the argument is unpersuasive.  This tortured construction is at odds with the concept of "estate," which refers to the debtor's interests in property, not to obligations to creditors or other parties in interest.  Section 541(a)(1) defines the "estate" as comprising "all legal and equitable interests of the debtor in property as of the commencement of the case."  Kelley Drye has not provided any authority for its argument that the interests of the estate include the interests of holders of administrative claims.

As this Court has found, appointing a chapter 11 trustee or converting the case would cause the estate to incur additional expenses and would result in the unsecured creditors receiving little distribution, if any.  The fact that Weinberg Gross & Pergament has since withdrawn its fee application does not affect this conclusion because the application was only withdrawn in light of the Court's decision to dismiss the case, and would be renewed if the case were converted, as counsel confirmed on the record.

Additionally, the determination that dismissal is in the best interests of creditors and the estate is not affected by the probable result that Sabatini will execute its judgment and reach the Debtor's assets before other unsecured creditors.  "It is not necessary that the interest of every creditor actually favor conversion.  There is no specific numerosity requirement inherent in section 1112(b) best interest test.  The interest of a single creditor with a large enough claim will suffice."  In re Staff Investment Co., 146 B.R. 256, 261 (Bankr. E.D. Cal. 1992) (citing Goodrich v. Lines, 284 F.2d 874, 877 (9th Cir. 1960)).

Kelley Drye's argument that dismissal would allow Sabatini to execute its judgment on the assets of the Debtor in contravention of the priority scheme of the Bankruptcy Code must also be rejected. The priority scheme of the Bankruptcy Code comes into play when distributions are made in a bankruptcy case. See §§ 507, 726, and 1129. This Court has not found, nor has Kelley Drye provided, any authority requiring administrative claims to be paid before a chapter 11 case is dismissed. Essentially, Kelley Drye urges this Court to read § 1112(b) as follows: "[O]n request of a party in interest . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate after payment of administrative expenses, if the movant establishes cause." Adopting Kelley Drye's argument would be reading a requirement into the statute that simply does not exist, and would be in contravention of the Bankruptcy Code. There is nothing manifestly unjust about enforcing the Bankruptcy Code according to its provisions, and therefore, Kelley Drye's motion must be denied not only under the standard governing motions to reconsider, but also under the substantive standards of §§ 1104(a) and 1112(b).

The appointment of a chapter 11 trustee under § 1104(a)(2) or (3) is improper where, as here, the Court determined that dismissal is in the interests of creditors and the estate. Pursuant to § 1112(b)(1), where the Court has found that there are grounds to dismiss or convert a chapter 11 case, conversion or dismissal is mandatory. 11 U.S.C. § 1112(b)(1). The only exception to the requirement that conversion or dismissal be granted is where the circumstances set forth in § 1112(b)(2) or (c) exist – which is not the case here – or where, under § 1104(a)(3), the Court determines that the appointment of a trustee is "in the best interests of creditors and the estate" – the same standard that the Court is directed to apply in choosing between conversion and dismissal under § 1112(b)(1). There is no exception to the requirement of dismissal or

conversion based upon § 1104(a)(2), which requires the appointment of a chapter 11 trustee if it is in the interest of creditors, any equity security holders, and other interests of the estate. To interpret § 1104(a)(2) as taking precedence over the statutory mandate to convert or dismiss under § 1112(b) would directly contradict the plain language of § 1112(b), which specifies § 1104(a)(3) as the sole basis upon which a chapter 11 trustee may be appointed where grounds to convert or dismiss are found.

Furthermore, to appoint a chapter 11 trustee under § 1104(a)(2), "courts look to the practical realities and necessities" of the case. In re Euro-Am. Lodging Corp., 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007). It is not appropriate where, as here, there is no possibility of the case concluding as a chapter 11 case. Here, given the administrative insolvency of the Debtor, continuing losses to the estate, and impossibility of confirming even a liquidating plan, given Sabatini's dominance of the class of unsecured creditors, there is no "practical reality that a trustee is needed." Id. at 428. The appointment of a chapter 11 trustee would only serve to increase the administrative expenses of this already administratively insolvent case, and would not be in the interests of creditors. The only benefit would be realized by holders of administrative claims because they would receive a distribution, at the expense of creditors.

The remaining matter before the Court is Sabatini's request that this case be dismissed with prejudice. Sabatini argues that it is unfair to allow the Debtor to seek bankruptcy protection again, receiving the benefit of the automatic stay, and thereby frustrating Sabatini's efforts to enforce its judgment. The Court concludes that dismissal with prejudice is not warranted here. Such relief is appropriate in circumstances where the debtor abused the bankruptcy process, for example, by filing in bad faith. Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327 (2d Cir. 1999); In re Van Eck, 425 B.R. 54, 68-69 (Bankr. D. Conn. 2010). There is no evidence in

15

the record that the Debtor abused the bankruptcy process, and therefore, dismissal with prejudice is not warranted.

## Conclusion

For the foregoing reasons, the fees and expenses of the professionals are fixed in this case as set forth above, Kelley Drye's motion to appoint a chapter 11 trustee or to convert this case is denied, and Sabatini's request that the dismissal of this case be with prejudice is denied. A separate order will issue.



**Dated: Brooklyn, New York**
**October 18, 2010**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**